[LOCAL LAW.    CHANCERY.]

## HOOFNAGLE and Others v. ANDERSON.

A patent is a title from its date, and conclusive against all those whose
rights did not commence previous to its emanation.

Courts of equity consider an entry as the commencement of title, and
will sustain a valid entry against a patent founded on a prior defec-
tive entry, if issued after such valid entry was made.

But they never sustain an entry made after the date of the patent.

This case attempted to be taken out of the general rule, upon the
ground that the equity of the party claiming under the entry com-
menced before the legal title of the other party was consummated.

But the circumstances of the case, and the equity arising out of it, were
not deemed by the Court sufficient to take it out of the general rule.

### APPEAL from the Circuit Court of Ohio.

*Feb. 25th.*      This cause was argued by Mr. *Scott* and Mr.
*Doddridge* for the appellants, and by Mr. *Talbot*
and Mr. *Brush* for the respondent.

*March 2d.*      Mr. Chief Justice MARSHALL delivered the opi-
nion of the Court.

This suit was brought by the appellants, who were
plaintiffs in the Circuit Court for the District of Ohio,
to obtain a decree for the conveyance of a tract of
land of which the respondent has the legal title.

The land lies within the tract of country reserv-
ed by the Commonwealth of Virginia, out of her
cession to the United States for the officers and sol-

diers of the Virginia Continental line. The respondent's patent is dated on the 9th day of October, 1804, and is founded on a warrant for military services, issued from the land office of Virginia, to Seymour Powell, heir of Thomas Powell, on the 29th day of May, 1783, which was entered in the office of the principal surveyor on the 16th of June, 1790, and was surveyed on the 30th of October, 1796. The survey was assigned for a valuable consideration to the appellee, in whose name the patent was issued.

The entry under which the plaintiffs claim was not made till the 28th day of May, in the year 1806; and was consequently eighteen months posterior to the emanation of the defendants grant. They insist, however, that this grant ought not to stand in their way, because it was obtained contrary to law, being founded on a warrant, which was issued by fraud or mistake.

It is admitted, that the service of Thomas Powell was performed in the State, and not in the Continental line of Virginia; consequently, the recital of his military service is erroneous. The warrant ought to have been for services in the State, instead of the Continental line. How far the patent ought to be affected by this error is the question on which the cause depends.

It is obviously the error of the Register of the land office, because the certificate on which the warrant issued states the service correctly. There can be no ground for suspecting, that any fraud is mingled with this mistake. At the time the warrant was

1822.

Hoofnagle
v
Anderson.

made out, its value was precisely the same if for services in the State, as if for services in the Continental line. The quantity of acres allowed to the officer was the same; and precisely the same land was subject to be appropriated by each warrant. Virginia considered the services of the Continental and state officers as equally meritorious, and had equally rewarded them. There could exist then no possible motive for the erroneous statement on the face of the warrant, that it was issued for services in the Continental instead of the State line. It was of no advantage to Seymour Powell, whose father had performed service which the law deemed a full consideration for a warrant of equal value with that which was given him by mistake.

This warrant was assignable, and carried with it no evidence of the mistake which had been committed in the office. It has been assigned for a valuable consideration, and the purchaser has obtained a patent for a part of it, without actual notice that there was any defect in the origin of his title. Should he lose this land his warrant is lost. There is no longer any tract of country in which it can be located.

The title of the respondent to the particular tract included in his patent, was complete before that of the appellants commenced. It is not doubted that a patent appropriates land Any defects in the preliminary steps, which are required by law, are cured by the patent. It is a title from its date, and has always been held conclusive against all those whose rights did not commence previous to its emanation. Courts of equity have considered an entry as the com-

mencement of title, and have sustained a valid entry against a patent founded on a prior defective entry, if issued after such valid entry was made. But they have gone no farther. They have never sustained an entry made after the date of the patent. They have always rejected such claims. The reason is obvious. A patent appropriates the land it covers; and that land, being no longer vacant, is no longer subject to location. If the patent has been issued irregularly, the government may provide means for repealing it; but no individual has a right to annul it, to consider the land as still vacant, and to appropriate it to himself.

The counsel for the appellants attempt to take this case out of the general rule, because their equity, they say, commenced before the legal title of the respondent was consummated, and their pre-existing rights were impaired by his intrusion into the military lands reserved for the Virginia Continental troops. The officer under whom they claim had a right to elect among all the vacant lands in the reserved territory, and this right of election was narrowed by the respondent's patent.

This is a general indefinite equity, not applicable to one tract of land more than to another, and which has, perhaps, never been allowed under circumstances resembling those which exist in the present case. It is a *scintilla juris* which we should find much difficulty in supporting against a complete legal title founded on an original claim of equal merit of the same character. When it is recollected that, in their origin, these claims stood equal, and were equally

1822.

Hoofnagle
v.
Anderson.

capable of appropriating the same land, it might well be urged that the rights of the State officers were not sufficiently respected, when the legislature omitted to insert them, as well as their brethren of the Continental line, in the reservation for military warrants ; and that the mistake in the land office has only retained for Mr. Powell rights which he ought never to have lost. The act which authorizes surveys on the northwest side of the Ohio, on warrants granted to the officers and soldiers of the Virginia Continental line, likewise authorized the surveying of those which had been granted to the, officers and soldiers of the State line. The laws granting these bounties, setting apart this tract of country, and authorizing these surveys, were public laws. They were known, or might have been known, to the government of the Union, when the cession was made and received. This right of election which the appellants would now set up against a complete legal title, originated in them, and was common to both parties. The equity of the one cannot be so inferior to that of the other as to justify the Court in considering the patent of the one as an absolute nullity, in favour of the other who has attempted to appropriate the same land after such patent had been issued.

But this right of election, for which so much efficacy is claimed in this case, has some existence in the common case of treasury warrants. The holder of such warrant has a right to locate it on any land, and no land can be regularly patented unless it be first located and surveyed. If a survey be made on

a place different from the entry, it is as if made with- out an entry, and the holder of any other warrant has a right to take the land. A patent for this land, not founded on a previous entry, narrows his right of election ; yet it has always been held, that such patent, though it must yield to a prior entry, would hold the land against a subsequent entry. The en- try, and not the warrant, has always been considered as the commencement of title.

The principle is well settled, in other cases, that a patent is unassailable by any title commenced after its emanation ; and we perceive no sufficient reason against applying the principle to this case.

It is contended, also, by the appellants, that as the warrant refers to the certificate of the Executive, as the authority on which it issued, it conveys notice of the contents of this certificate to every purchaser. But this reference to the certificate of the executive appears on the face of every warrant, and contains no other information than is given by law. The law requires this certificate as the authority of the Regis- ter. It is considered as a formal part of the warrant. These warrants are, by law, transferrable. They are proved by the signature of the officer, and the seal of office. This signature and this seal are con- sidered as full proof of the rights expressed in the paper. No inquiry is ever made into the evidence received by the public officer. If the purchaser of such a paper takes it subject to the risk of its having issued erroneously, there ought to be some termina- tion to this risk. We think it ought to terminate when the warrant is completely merged in a patent,

and the title consummated without having encountered any adversary claim.

The title under this warrant was considered in the case of *Miller v. Kerr and Others.*[a] In that case, the claimant under Powell had the junior patent, and the Court thought that the equity growing out of a prior entry might be rebutted by the person holding the legal title, by showing any defect in that equity; but nothing was said in that case which indicates an opinion that a complete legal title might be overthrown by an entry made after the consummation of that title.

Decree affirmed with costs.