Avert, J.
The complainant claims title to 640 acres of land in the Virginia military district in Ohio, between the rivers Scioto and Little Miami. He relies upon an entry No. 6,780, made on the 21st of May, or, as stated in his -bill, on June 22, 1810, upon a survey made April 26, 1826, examined and recorded September 29, 1817, and a patent from the United States, dated November 20, 1838.
The defendants claim under entry No. 5,531, of 533 acres, made July 21, 1807, in the name of Joseph Harness, surveyed August 19, 1814, in two surveys, one of 157 acres, the other of 280 acres, and patented to Joseph Harness, September 17, 1814, and under a purchase and deed for both surveys, from the heirs of said Harness.
The patents of these contending parties, as to a part of the land embraced in the description of each, cover the same premises, and of course there must be a loss produced by this interference in the boundaries of the tracts. The present *bill is brought to cast the loss of that interference upon the defendants.
The legal rights of the parties are settled upon established principles, and without any difficulty, the older patent, except when void, which we do not find to be the case here, always succeeding at law. The defendants then have the legal right to the land in dispute, for they exhibit a title by patent, dated in 1814, whilst that of the complainant was not issued till 1838.
But a patent from the government, though it is admitted to pass an unquestioned legal title, is yet, upon a principle in our system also well established, made to yield to a prior equitable title, and therefore it became necessary in the ease, to examino and discuss the equitable as well as the legal rights of both the parties. This service has been thoroughly performed by the counsel on both sides in reference to the title of each, and as do- *469 rived through entries and surveys, withdrawals, relocations, patents, etc.
The complainant, to establish his equitable title to the tract in dispute, relies upon the entry 6,780, made as aforesaid in 1810, in virtuo, as he alleges, of military warrants numbered 1,899, 332, 1,824, of 200 acres each, and forty acres, part of No. 750, which, as it appears, was for 200 acres also. This equity of the complainant, if it can be sustained, having been in existence at a period earlier than the date of the defendant’s patent, must prevail - over every right of theirs derived merely from their patent. It becomes important, therefore, to inquire whether this entry and' survey conferred any equitable rights upon the complainant, as against the defendants, who afterward appropriated the same land by their grant from the government. The burden of proving this equity rests, of course, upon the complainant who sets it up, and who must make this proof before his adversary is called upon to take any steps toward his defense.
What, then, are the facts connected with this entry? David Ross & Co., being the owners, in 1784, of the military warrants, on which this entry No. 6,780, in Ohio, is claimed *to have been made, then entered in Yirginia, by virtuo of these identical warrants, a tract of 1,000 acres of land. This tract being entry No. 70 in what is now Kentucky, was surveyed and recorded in 1785, and a patent for the same was granted to Ross & Co., by the commonwealth of Yirginia, in 1786.
The military warrants above referred to, issued according to the law of Yirginia, from the land office in that state. It empowers the officer or soldier for whose benefit it is given, his heirs or assigns, to select for himself the'number of acres specified therein, from certain lands of Yirginia, set apart for that purpose, and to have the same surveyed and laid off to him. After the location is made, and the boundaries ascertained by a survey, the owner of the warrant returns it to the state authorities, and receives in the place of it, a patent or grant from the government. This grant is equivalent to a deed in foe simple for the tract described, passing all the title from the government to the grantee.
It is contended, for the defendants, that the warrant thus passing into grant has performed its office ; that having been given up for a patent, which in law appropriates the land therein described, it can never afterward be withdrawn, nor be used to appropriate any *470 other tract of land, and this objection to bringing the warrant a second time into use is not easily obviated, whether we regard the object and nature of the warrant or judicial authority bearing upon, the subject. Hoofnagle and others v. Buchanan, 7 Wheat. 214. It does not appear that any legislative acts of Virginia or any decisions of the courts have received military warrants after they had by the emanation of a patent become of no value, except in the character of evidence.
This patent for the land in entry No. 70, it appears, then, is given by Virginia for a tract of land, then lying within that state and claimed to be the property of the state, and a part at least of the tract so entered and surveyed is held under the patent thus issued; how much does not appear by *any survey of the premises. But whether these warrants, after passing into grant, have no longer any efficacy to authorize and support an entry in Ohio, or whether the act of Congress of May 13, 1800, authorizing, in case of interference in Ohio, a withdrawal of the warrant, may be supposed likewiso to justify and sustain an entry in Ohio under a warrant withdrawn or treated as withdrawn by reason of interference in Kentucky, arc questions which we do not here decide, because it becomes unnecessary from the view which, as will be hereafter stated, wo have taken of the evidence in the case. Under these warrants, a right in the land no doubt exists before the issuing of a patent, and one which courts will respect. This right or equitable interest commences with the entry. But it must be a lawful and valid entry. Certainly no unlawful or unauthorized entry can give an equitable title. To be a valid entry binding upon the government, and efficacious to hold the land against others disposed to locate it, it must be made by virtue of a Virginia military warrant still subsisting. It is settled, indeed, in practice and by judicial decisions, that possession of the warrant gives authority to make the location. 4 Pet. 239. It will bo considered as done with the real owner’s consent, and will operate for his benefit. It is to be done, however, in the name stated in the warrant, or as it is assignable, in the name of the person to whom it appears to be actually assigned. But this must bo an unsatisfied warrant; it is this that gives the right to the land, the state is not called upon to furnish more than what is justly required to satisfy the warrants.
Does the evidence in support of this equitable title prove the *471 existence of such unsatisfied warrants at the time of the entry in Ohio? The power of the warrants under consideration was once believed to be exhausted, and so treated by all the parties having an interest in them, when, as before stated, they were succeeded by a patent for the land on which they had been located. Had the tract No. 70, in Kentucky, contained the complement of unappropriated land, these warrants would still have remained satisfied and incapable ;tof supporting an entry. The survey of this No. 70 remains as it was originally, no other survey of any part nor a survey of the whole ever having been admitted to record. There appears, indeed, upon the margin of the record entry a memorandum of “ 640 acres withdrawn,” and the principal surveyor certifies that it was withdrawn by reason of its having been lost by interference with Henderson’s grant. But in the opinion of the court this is not, nor is there, as they think by any other proof in the case, sufficient evidence either of the exact quantity or of any quantity lost. This certificate of the surveyor is not recognized as establishing the loss. There is, therefore, no proof of an equitable title commencing with the entry. Nor can it be conceded that this question of the equitable right belongs to the department at Washington, and is settled when the patent issues. After the proper officers hero have acted upon proof satisfactory to themselves, and upon such proof have issued a patent, the legal title passes out of the government to the grantee, and so far effect is given to their decision. But they are not a court provided with the necessary and best means of ascertaining- and determining facts. Others, claiming equitable rights in the land, can not be present nor represented there; and it would be contrary to very sound rules if their interests were to be concluded by any such ex- parte examination. With regard to the very tract in controversy, the authorities at Washington have made contradictory decisions; first conveying it by patent to the defendant’s grantor, and afteward to the complainant, and it is not perceived in what manner by any power of theirs, the difficulty arising from this interference could have been prevented. The issuing of the patent then, and the recitals it contains, are not claimed in the actual state of this case to be controlling evidence of complainant’s equitable title at the date of his entry. The existence of such an equity is a fact to bo established by proof before the court, and this fact, to be of any avail, must have existed before the date of the defendants’ patent.
*472 *By what mode of proceeding was the complainant’s patent obtained? Vc have certified copies, supplied by the defendant, of the exhibits and proofs presented there. The warrants were not produced; but in their place a copy of the Virginia patent was sent. This patent is not by any law a warrant for entering land. A copy of entry No. 70, and of the survey under it, was jmoduced. Neither the entry nor survey states, with reference to the authority on which they wore founded, anything more definite than that each was made upon several military warrants. In this manner a tract of 1,000 acres of land was taken up. The surveyor, however, found evidence satisfactory to himself among the files of his office, and he has certified that these warrants wore used for the purpose of securing tract No. 70. There were produced likewise, from the register of the Virginia land office, copies of these four warrants of 200 acres each, accompanied by a certificate that they were not located, surveyed, or patented in the name of the persons to whom they were originally given. These copies could not have been accepted in the place of the warrants, under either the law of Virginia or the law of the United States, concerning lost warrants, for they were not lost or destroyed in any sense contemplated by those laws. Nor do the papers from the Virginia land office certify that the warrants, or a part thereof, remain unsatisfied, so that copies, instead of the originals, might be received under the act of Congress of June 9, 1794, which provides for certified copies under the 'seal of the office where the warrants are legally kept. There was further produced before the authorities at Washington a certified copy, from the principal surveyor, of entry No. 6,780 in Ohio, and the survey under it: and of the marginal entry of withdrawal upon the record, as before stated, of entry No. 70, with his (the surveyor’s) certificate, as to the warrants, entries, interference, etc., as above, and his certificate, that the warrants were never before satisfied; that said patent, on which said survey (the survey in Ohio) was founded, was in his (the surveyor’s) possession, unsatisfled, etc. *AI1 this proof, though it may authorize the issuing of a patent, which will carry the title to the rest of the tract specified in it, does not, in the judgment of the court, establish the title of the complainant to that part which is covered by the patent of the defendants. An equitable title, therefore, to the premises, is not shown by the complainants.
E. Dane, Gilbert & Baldwin, for complainant.
T. Ewing, for defendant.
There being, as the court believe, no proof that the patent of the defendants is void either in whole or as to the part now in dispute, there is no necessity of inquiring into their entry of 1807, or the amended entry of 1811. The defendants’ equity will, at all events, commence with their patent, and their title so accruing, being earlier than the title either equitable or legal established by the complainant, must prevail in the case.
The injunction will therefore be dissolved and the bill dismissed;