The bill must therefore be dismissed.

---

St. Louis Smelting & Refining Co. *v.* Green and others.

*(Circuit Court, D. Colorado.   June 19, 1882.)*

1. EJECTMENT—PATENT NOT SUBJECT TO COLLATERAL ATTACK.

In an action of ejectment defendant cannot collaterally attack a patent for land issued by the officers of the land department of the government, even upon the ground of fraud.

2. SAME—ESTOPPEL, DOCTRINE OF.

If the owner of an estate stands by and sees another erect improvements on the estate, in the belief that he has the right to do so, and does not interpose to prevent the work, he will not be permitted to claim such improvements after they are erected; but he is not thereby estopped to claim the title in an action of ejectment.

3. SAME—INSUFFICIENT PLEA.

An allegation that after defendants were notified and informed that plaintiff had applied for a patent they had an arrangement with the plaintiff by which plaintiff assured them that he would sell to them for a nominal price, and would not disturb them in their possession, is not a good plea of estoppel.

Ruling on Demurrer.

*G. G. Symes,* for plaintiff.

*T. A. Green,* for defendants.

McCRARY, C. J., *(orally.)*   This in an action of ejectment, and the record shows, and the defendants by their pleadings admit, that the plaintiff claims under a patent of the United States. Some of the questions in the case have been determined heretofore upon demurrers to former answers. The questions now to be considered arise upon demurrer to the third amended answer. By this pleading the defendants seek to attack, in this action of ejectment, the patent

under which the plaintiff claims. They do so upon two grounds, substantially. The answer is quite voluminous, but its allegations may all be summarized under two heads:

*First*, that the patent was obtained by the patentee, Mr. Starr, under whom the plaintiff claims, by fraud, conspiracy, bribery, and perjury; *second*, defendants plead, as an estoppel, certain facts, to which I will refer presently,

With regard to the defense that the patent was obtained by fraud, etc., it may be observed that many of the allegations of the answer are too general in their character to be sufficient. It is, of course, not enough to say in general terms that an instrument has been obtained or procured by fraud, perjury, or conspiracy. The pleader must state facts which will enable the court, and not the pleader, to determine whether there is a case of fraud or conspiracy or perjury. Still, we are of the opinion that there are, in this answer, allegations sufficient to call for a reply, if it be true, as claimed by the counsel for defendants, that a patent of the United States, in an action of ejectment, can be attacked collaterally for fraud. And this makes it necessary to determine that question. It is a question about which the authorities are not in entire harmony. But we are, of course, concluded by the decisions of the supreme court of the United States, and it is therefore proper that we should refer to the decisions of that court, and determine whether the question is settled, so far as this court is concerned.

Another action of ejectment, arising upon this identical patent, was brought in this court some time since, and was tried here. The court in that case admitted certain evidence tending to show that the officers of the land department had issued the patent improperly and erroneously. The judgment of the court in that case has been reversed, and an elaborate opinion pronounced by Mr. Justice Field, is now before us. In that opinion, the doctrine is laid down so clearly and emphatically as to leave no room for doubt, that, in an action of ejectment, the defendant cannot be permitted to attack a patent, even upon the ground of fraud. He must resort to a court of equity.

After citing numerous cases in the supreme court of the United States, the opinion in the case just referred to proceeds as follows:

"According to the doctrine thus expressed, and the cases cited in its support,—and there are none in conflict with it,—there can be *no doubt* that the court below erred in admitting the record of the proceedings upon which the

patent was issued, in order to impeach its validity. The judgment of the department, upon their sufficiency, was not, as already stated, open to contestation. If, in issuing a patent, its officers took mistaken views of the law, or drew erroneous conclusions from the evidence, or acted from imperfect views of their duty, *or even from corrupt motives*, a court of law can afford no remedy to a party alleging that he is thereby aggrieved. He must resort to a court of equity for relief, and even there his complaint cannot be heard unless he connect himself with the original source of title, so as to be able to aver that his rights are injuriously affected by the existence of the patent; and he must possess such equities as will control the legal title in the patentee's hands. *Boggs* v. *Merced Mining Co.* 14 Cal. 363–4. It does not lie in the mouth of a stranger to the title to complain of the act of the government with respect to it. If the government is dissatisfied, it can, on its own account, authorize proceedings to vacate the patent or limit its operation."

And, proceeding, the court says:

"The case at bar, then, is reduced to the question, whether the patent to Starr is void on its face; that is, whether, read in the light of existing law, it is seen to be invalid. It does not come within any of the exceptions mentioned in the cases cited. The lands it purports to convey are mineral, and were a part of the public domain. The law of congress had provided for their sale. The proper officers of the land department supervised the proceedings. It bears the signature of the president, or rather of the officer authorized by law to place the president's signature to it—which is the same thing; it is properly countersigned, and the seal of the general land-office is attached to it. It is regular on its face, unless some limitation in the law, as to the extent of a mining claim which can be patented, has been disregarded."

Without reading further from that opinion, it is sufficient to say that the doctrine is fully and elaborately discussed, and numerous cases are cited as establishing the doctrine that a patent of the United States, in an action of ejectment, cannot be collaterally attacked.

The cases referred to may be mentioned, although I shall not take the time to read from them or comment upon them: *Pope's Lessees* v. *Wendall,* 9 Cranch, 87; *Patterson* v. *Winn,* 11 Wheat. 380; *Hoofnagle* v. *Anderson,* 7 Wheat. 212; *Boardman* v. *Reed,* 6 Pet. 342; *Bignall* v. *Broderick,* 13 Pet. 448; *Johnson* v. *Towsley,* 13 Wall. 72; *Moore* v. *Robbins,* 96 U. S. 585.

In the case of *Johnson* v. *Towsley* the doctrine was stated by Mr. Justice Miller in these words, (13 Wall. 83:)

"That the action of the land-office, in issuing a patent for any public land subject to sale, by pre-emption or otherwise, is conclusive of the legal title, must be admitted on the principle above stated, and in all courts and in all forms of judicial proceedings where this title must control, either

by reason of the limited powers of the court or the essential character of the proceeding, no inquiry can be permitted into the circumstances under which it was obtained. On the other hand, there has always existed in the courts of equity the power, in certain classes of cases, to inquire into and correct mistakes, injustice, and wrong in both judicial and executive action, however solemn the form which the result of that action may assume when it invades private rights; and, by virtue of this power, the final judgment of courts of law have been annulled or modified, and patents and other important instruments issuing from the crown, or other executive branch of the government, have been corrected or declared void, or other relief granted."

It is hardly necessary to say that an action of ejectment is preeminently an action in which the legal title must prevail, and therefore one in which, according to this ruling, the patent cannot be attacked collaterally.

Governed and controlled, therefore, by the decisions of the supreme court of the United States, we are bound to say that so much of this answer as sets up fraud, conspiracy, etc., is bad, and that the demurrer must therefore be sustained.

I come now to the consideration of that part of the answer in which the defendant pleads estoppel. It is somewhat voluminous, but I will state in condensed form the substance, as I understand it, of the pleading.

The answer demurred to, so far as this question of estoppel is concerned, pleads certain facts, which, it is claimed, should estop plaintiff to recover in this case. Many of these facts tend only to show fraud, and are therefore, under the doctrine already announced, not admissible in this form of action. Eliminating the allegations falling within this description, we have remaining in substance the following:

*First.* That defendants are owners of and entitled to the possession of the property in controversy, by virtue of prior, adverse, and exclusive possession of the same, as part of a town site on the public domain.

*Second.* That Starr obtained the mining patent, under which plaintiff claims title, for 164 61-100 acres, all of which was included within the town site and city of Leadville.

*Third.* That said Starr claimed under placer mining claims which had their inception in favor of his grantors in 1860, the claims of Starr himself dating from August, 1877.

*Fourth.* That after the inception of these claims, and prior to the issuance of the patent to Starr upon them, the city of Leadville grew to a city of 20,000 people, and the property greatly increased in value.

*Fifth.* That, during that time, Starr, the patentee, was living in Leadville, and witnessed the improvements that were being made, and the large sums of money being expended by defendants, as settlers on the lots now in con-

troversy, and during all said time said Starr and his grantors stood by and kept quiet in regard to his or their ownership of said mining claims, and confederated with certain other parties in interest to stand by and secrete all their claims to ownership and all their efforts to obtain a patent.

*Sixth.* That plaintiff had an interest in the Starr patent, and by its general manager, August Myers, also stood by and saw the property improved by defendants, and never at any time notified defendants that the plaintiff had made or would make any claim to said land, but, on the contrary, secreted and concealed the same.

*Seventh.* That said Myers, general agent, and one Harrison, the president of plaintiff company, conspired and combined with Starr to secrete and conceal their claims, with the intention of allowing the defendants to go on and spend their money in making valuable improvements, etc.

*Eighth.* It is, however, admitted that defendants were notified of the application for a patent made by Starr, and it is averred that after defendants found that said application included land situated in said city of Leadville, the said Starr and Myers and Harrison, through their attorney, one Hereford, assured defendants that in case said patent should be obtained, defendants would not be disturbed or interfered with in their right and possession, and, at most, only a nominal sum would be expected or demanded of defendants, and in no case to exceed twenty-five dollars per lot, and advised defendants to go on making improvements, and that they did go on, relying upon these assurances, and made valuable improvements, etc.

*Ninth.* That after obtaining the patent plaintiff gave notice that it would claim the full value of the lots.

It will be observed that the plea of estoppel rests upon two separate allegations: The first is that the plaintiff stood by and saw defendants make improvements upon these lots, and failed to make known to the defendants the fact that they (the plaintiffs) were seeking to obtain a patent for the land upon which defendants were making the improvements.

The principle sought to be invoked, I apprehend, upon this branch of the case is the very familiar rule of the law of estoppel, that if the owner of an estate stands by and sees another erect improvements on the estate in the belief that he has the right to do so, and does not interpose to prevent the work, he will not be permitted to claim said improvements after they are erected.

In the first place, it is extremely doubtful whether that principle of the law can be invoked in a case of this character, for it is not claimed, and cannot be, that at the time these plaintiffs are charged with having stood by and advised the erection of these improvements, they were the owners of this property; and I have never heard it asserted before that a party who intends to purchase land, or who has applied to the owner for the right to purchase it, stands

in the position of ownership within the meaning of this principle, so that he is bound to warn all persons to make no improvements upon such land, at the peril of losing them.

Assuming, however, that for the purposes of this decision the defendants did stand in the relation of owners of this land at the time, I do not think this principle of the law of estoppel can be carried so far as to hold that even the owner of real estate who stands by and sees another make improvements upon it, and makes no objection, is thereby estopped thereafter to claim the title of the real estate; he may be estopped to claim the improvements, but I do not think that he is estopped to claim the title in an action of ejectment.

There is another reason why it is difficult to hold that this doctrine of estoppel can apply to a case like this: The law prescribes the mode and manner by which entries of the public mining lands are to be made, and, among other things, it is provided, by section 2335 of the Revised Statutes of the United States, that an applicant for a mineral patent must post a plat of the land and notice of his application for a patent in a conspicuous place on the land embraced in such plat. Now, it must be presumed that this law was complied with; and if so, how can it be said that the parties applying for the patent gave no notice, no warning, to anybody? The very fact of their giving this notice was of itself a warning to all who were upon the land, or were about to erect improvements upon it, that these parties were applying for a patent, and were seeking to obtain the title. Moreover, it is admitted by this answer that they did, in fact, ascertain the fact of this application for a patent. Now, one of the familiar rules with regard to estoppel, which we all understand perfectly, is this: That the party to whom the representations are made must be ignorant of the truth of the matter about which they are made. If he knows the fact, and chooses to take his chances, the other party is not estopped.

For these reasons, then, we are constrained to hold that the allegation that the plaintiffs and their grantors stood by while these improvements were being made, and made no objection, does not amount to a good plea of estoppel in this action of ejectment.

The other allegation under this head is that, after the defendants were notified and informed of this application for a patent, they had an arrangement with the plaintiff by which the plaintiff assured them that after obtaining a patent it would sell to them for a nominal price, and would not disturb them in their possession. This is not a good plea of estoppel. It lacks some of the essential elements

of such a plea. It alleges an arrangement, understanding, or agreement entered into confessedly with full notice on the part of defendants that Starr had applied for a patent, with a view to obtaining title to the land, and by which defendants were to obtain that title from Starr, or plaintiff, after it should be vested in one or both of them. How, then, can it be set up as an estoppel to prevent plaintiffs from recovering that title in ejectment? Defendants did not act in ignorance of the facts, but with notice, relying upon the promise of plaintiffs to convey the title upon certain terms and conditions after obtaining it. If, therefore, the arrangement amounted to anything, it is simply a contract under which, if it be valid and binding, defendants may be entitled to have a remedy. If it be a contract capable of specific performance, it must be in a court of equity. If it be one upon which defendants are entitled to recover damages, the proper action must be brought for that purpose. As the arrangement, whatever it was, clearly contemplated the obtaining of the legal title by plaintiff, it cannot be set up by way of estoppel in the present action.

There is still another branch of the answer, in which there is a counter-claim, based upon the value of these improvements. Without going much into that, we overrule the demurrer to that part of the answer, and reserve the question as to what the law may be until the evidence shall be produced.

In view of the importance of this case, and of the fact, as we are advised, that it will affect the decision in numerous other cases, we have given such consideration to it as was possible under the circumstances. If we are wrong in any of the conclusions which have been announced, the record will be in good shape for the defendants to present the question to the supreme court, where the whole matter can be reviewed, and, perhaps, in the best possible form for the defendants, being an issue upon demurrer, which will raise all the questions they desire to have determined.

The demurrer to so much of the answer as sets up fraud and estoppel is sustained.

The demurrer to the counter-claim is overruled.

*Mr. Green.* We will stand by our answer.

*The Court.* Unless there are some other questions in the other cases, the same order must be entered in all of them.