**PUTNAM et al. v. ICKES, Secretary of the Interior, et al., and seven other cases.** *
Nos. 6376–6383.

United States Court of Appeals for the District of Columbia.

Argued April 8, 1935.

Decided May 6, 1935.

Writ of certiorari denied 56 S. Ct. 132, 80 L. Ed. —.

224

R. M. Hudson and Minor Hudson, both of Washington, D. C., for appellants.

J. Kennard Cheadle, Edward C. Finney, William G. Feely, F. W. Clements, and Challen B. Ellis, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

■ The above appellants, petitioners in the court below, each filed an application for a homestead entry within the bounds of a tract of land located in the state of California. The lands referred to are known as Santa Ana Ranch or grant, containing approximately 62,516.57 acres, all of which is alleged to be public domain of the United States. This land was acquired as a Spanish grant protected by the cession of California by Mexico to the United States for which a patent was issued December 21, 1883, to one Bernardo Yorba and others. There was included in this patent 78,941.49 acres. It is alleged that the patent is invalid, null, and void, and was issued through fraud, corruption, collusion, and connivance of agents, officers, officials, and attorneys of the United States, and of the then imperial government of Mexico.

It is claimed that, as a result of the alleged fraud and collusion, these are public lands of the United States and subject to entry under the homestead law. The property is alleged now to be worth approximately $50,000,000. The petitions allege in detail the circumstances under which these lands were acquired, and seek declaratory relief under the authority of the Act of Congress of June 14, 1934, 48 Stat. 955, 956 (28 USCA § 400).

Plaintiffs sought to bring the defendants within the jurisdiction of the Supreme Court of the District of Columbia through personal service of summons upon them in the state of California, where all of the defendants, with the exception of the Secretary of the Interior, reside. Personal service was made upon the Secretary within this District. Motions to quash the service of summons and to dismiss the bill in each of the respective cases was ma le and sustained by the court below, and from the decrees entered thereon the cases come here on appeal.

■ Section 112, title 28, USCA, section 51 of the Judicial Code, provides, among other things, as follows: "No civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant." This statute confines the jurisdiction of actions in personam to the district in which the defendant is an inhabitant, and there is no exception to the rule. Ladew v. Tennessee

Copper Co., 218 U. S. 357, 31 S. Ct. 81, 54 L. Ed. 1069; Seaboard Rice Milling Co. v. Chic., R. I. & Pac. R. Co., 270 U. S. 363, 46 S. Ct. 247, 70 L. Ed. 633. This rule of procedure is not affected as to the defendants who reside in California by reason of the fact that personal service was had upon the Secretary of the Interior, one of the parties defendant in these suits. Camp v. Gress, 250 U. S. 308, 39 S. Ct. 478, 63 L. Ed. 997.

Section 118, title 28, USCA, section 57 of the Judicial Code, provides for the service of process upon nonresident defendants in actions brought in district courts of the United States through service of process by publication. Under this section of the Judicial Code the court is authorized to order personal service of process upon a nonresident defendant at any place within the United States where the defendant may be found. In the event that the defendant cannot be found for personal service, the court may order publication of summons once a week for six consecutive weeks upon such nonresident defendant or defendants. Such personal service of process or service by publication is limited to actions to enforce a legal or equitable lien upon or claim to or to remove an incumbrance or lien or cloud upon title to real or personal property situate "within the district" in which such action is instituted.

It is clear that service in the instant cases could not be legally made under the provisions of the Judicial Code, since the real property constituting the res in this case is all located within the state of California and entirely beyond the jurisdiction of the courts of this district to furnish any relief.

On the other hand, if, as contended by counsel for appellants, these are actions in personam for the mere cancellation of the patents, then personal service can only be made within the jurisdiction in which the case is pending, and substituted service cannot under any circumstances be resorted to. Here the defendants, excepting the Secretary of the Interior, are not residents or inhabitants of the District of Columbia, but are all residents of the state of California; hence the foregoing provisions of the Judicial Code cannot afford relief, even if this be treated as a personal action. Herndon v. Ridgway, 17 How. 424, 15 L. Ed. 100; Munter v. Weil Corset Co., 261 U. S. 276, 43 S. Ct. 347, 67 L. Ed. 652;

Kansas City Southern Ry. Co. v. Chicago Great Western R. Co. (D. C.) 58 F.(2d) 810.

But are appellants in any better position under the provisions of the declaratory relief statute? We think not. This act, among other things, provides as follows:

"Be it enacted * * * That the Judicial Code, approved March 3, 1911, is hereby amended by adding after section 274C thereof a new section to be numbered 274D as follows:

"'Sec. 274D. (1) In cases of actual controversy the courts of the United States shall have power upon petition, declaration, complaint, or other appropriate pleadings to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

"(2) Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party, whose rights have been adjudicated by the declaration, to show cause why further relief should not be granted forthwith.

"(3) When a declaration of right or the granting of further relief based thereon shall involve the determination of issues of fact triable by a jury, such issues may be submitted to a jury in the form of interrogatories, with proper instructions by the court, whether a general verdict be required or not.'" (48 Stat. 955, 28 USCA § 400.)

What is sought here by appellants is a declaratory judgment or decree in effect adjudicating the patents issued for the lands in question and the grant upon which those patents are based to be invalid and void, and a declaration by the court of the respective rights of the appellants and the appellees to the real property in question, no part of which is situated in the District of Columbia, but wholly within the state of California.

It follows, we think, that, in so far as this action seeks an adjudication of the invalidity of the grant or patent to the real

property in question, it is merely an action in personam. It cannot under any theory of the case be treated as an action in rem, for the res, if any, here involved is real property situated in California. The grant or the patent cannot be treated as the res, since an action for the cancellation of an instrument conveying real property is an action in personam, especially if the real property is not situated within the boundaries of the jurisdiction of the court. In the absence of jurisdiction over the defendants or the property involved, the court is wholly without jurisdiction to render any relief whatever in the premises. Hart v. Sansom, 110 U. S. 151, 3 S. Ct. 586, 28 L. Ed. 101.

■ We think it is clear from any reasonable construction of the acts that the Declaratory Judgment Act has not given the courts jurisdiction over any controversy that would not be within their jurisdiction if affirmative relief were being sought. The act merely declares that a court of the United States has power "in cases of actual controversy * * * to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed." (28 USCA § 400.) It clearly follows, we think, that in any actual controversy wherein the court otherwise has jurisdiction of the subject-matter and the parties the court has power to determine the rights of the petitioner, although the case may not have developed to a point wherein affirmative relief could be given. That is as far as the act goes. The right of the court to assume jurisdiction is to be determined by the principles laid down in the Judicial Code. The Declaratory Act is in no respect amendatory of the Judicial Code either directly or by implication. If Congress had intended by this act to extend the jurisdiction of the courts in cases arising under it, it would have so stated in the act, and, in the absence of such statement or language clearly implying such intent, the act must be limited to the jurisdiction expressed therein.

■ We now come to the question of the jurisdiction of the court to compel the Secretary of the Interior, on whom personal service was acquired within the District of Columbia, to cancel the patents issued for the land in question, and to declare it public land of the United States, subject to homestead entry, and to approve the applications for homestead entries made in

these cases. We think that as to the suit against the Secretary of the Interior appellants are in no better position than they are with respect to the other defendants. There are several reasons why appellant's action against the Secretary cannot be sustained. Appellants have not disclosed on the face of their petitions any such interest in the land as will enable them to maintain an action contesting the title thereto. They allege merely an attempt on their part to file homestead entries on patented lands, and that the Secretary rejected the applications on the ground that the lands had long since been patented to confirmees of Mexican land grants. Appellants allege no interest in the occupied and patented lands other than that they are citizens of the United States, and as such have a right to make homestead entries upon the public lands of the United States. There is no principle better settled in our public land law than that a private citizen cannot initiate or acquire under the public land laws of the United States rights in land occupied by others who claim under the United States, even though the claim and occupation be fraudulent and wrongful as against the United States. This principle was early recognized by Chief Justice Marshall in Hoofnagle v. Anderson, 7 Wheat. 212, 217, 5 L. Ed. 437, where he declared: "The principle is well settled, in other cases, that a patent is unassailable by any title commenced after its emanation." This rule has been affirmed in many cases. Hosmer v. Wallace, 97 U. S. 575, 579, 24 L. Ed. 1130; In re Emblen, 161 U. S. 52, 54, 56, 16 S. Ct. 487, 40 L. Ed. 613; Emblen v. Lincoln Land Co., 184 U. S. 660, 664, 22 S. Ct. 523, 46 L. Ed. 736; Hodges v. Colcord, 193 U. S. 192, 24 S. Ct. 433, 48 L. Ed. 677; McMichael v. Murphy, 197 U. S. 304, 25 S. Ct. 460, 49 L. Ed. 766.

■ It is contended by counsel for appellants that, by the motions to dismiss, material allegations of the petition relating to the filing of homestead applications on public domain are admitted; and the allegation that the lands applied for are held under patents issued by the United States, which patents are alleged to be void, must be taken as admitted. The motions to dismiss, however, admit only those facts well pleaded. They do not admit arguments, inferences, or conclusions of law. The allegation that appellants filed homestead applications on public lands is controverted by the further allegation that the lands ap-

plied for are occupied and held under patents issued by the United States, and the allegations that the patents are void are based upon cumulative statements that the patents were issued under a statute that is unconstitutional.

This court in Maese v. Hermann, 17 App. D. C. 52, 59, involving a controversy over a Mexican land grant, said: "It is a well settled principle in the law of demurrer, that while the demurrer admits as true, for the purposes of the decision invoked by it, all facts well and sufficiently pleaded, yet it does not admit as true mere matters of law which the pleader may think proper to state in his pleadings, nor the conclusions drawn from the facts stated therein. That is for the court exclusively. Nor does the demurrer in any manner admit the correctness of an allegation as to the construction of a statute, or of a grant, or other document, or official act, that may be insisted upon by the pleader, as the foundation of his claim and title, or that may be set up in opposition thereto. That is matter of law for determination by the court. These propositions are too clear to require citations of authority for their support."

There is still a stronger reason why these suits cannot be maintained against the Secretary of the Interior, since they have no standing in court to seek a cancellation of the patents in question. It is well settled that a patent issued by the United States cannot be successfully attacked by strangers who are not able to show any interest in the land at the time the patent was issued and were not prejudiced by it. Burke v. Southern Pacific R. Co., 234 U. S. 669, 675, 34 S. Ct. 907, 58 L. Ed. 1527.

The principle was also stated in Peabody Gold Mining Co. v. Gold Hill Mining Co. (C. C.) 106 F. 241, 243, as follows: "The mere cancellation of the patent, with the reversion of the land to the government, is not within the province of a private party to effect by a suit in equity; that privilege rests only with the government. The demurrer will be sustained, and the bill dismissed." In the Gold Hill Case it was alleged that, by reason of the fraud of the patentee, a "patent was issued for a greater area of ground than is permitted by the act of Congress of May 10, 1872, and is therefore void as to such excess."

Nor does the allegation that the patent was void in part invoke any exception. It is universally held that the privilege of cancellation rests only with the government. In other words, the government can alone contest and seek the cancellation of an issued patent. United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93. This rule applies in all cases except where the plaintiff is in position to assert a superior title to that acquired through the government. In More v. Steinbach, 127 U. S. 70, 83, 8 S. Ct. 1067, 1072, 32 L. Ed. 51, the court, stating the rule, said: "Until the patent is set aside or modified by proceedings taken at the instance of the government, all the questions necessarily involved in the determination of a claim to land under a Spanish or Mexican grant, and in establishing its boundaries, are concluded by it in all courts and proceedings, except as against parties claiming by superior title, such as would enable them to resist successfully any action of the government in disposing of the property."

It is clear that the parties here were not occupants of the lands in question at the time the patents were issued, nor are they able to assert any superior title existing at that time. They are merely in the position of applicants for homestead entries which can only be made upon unoccupied lands of the United States. The lands in the present case were occupied at the time these applications were made. Patents were outstanding which are beyond the power of appellants to question as to their validity.

But more serious still is the futility of the case of the appellants against the Secretary of the Interior by reason of the statute of limitations. The Act of March 3, 1891, 26 Stat. 1099 (see 43 USCA § 1166 and note), provides as follows: "That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents." This statute has been held by the courts to be conclusive in its terms placing a limitation upon the time within which even the government itself may challenge the validity of a patent, although such patent may have been void at the time of issue, or may have been procured through fraud and deception. If the period of limitation has expired, the government is help-

less, and the rights of the patentee must be sustained.

In United States v. Chandler-Dunbar Water Power Co., 209 U. S. 447, 450, 28 S. Ct. 579, 580, 52 L. Ed. 881, the court, through Mr. Justice Holmes, speaking on the effect of the statute of limitations, said: "The patent had been issued in 1883 by the President in due form and in the regular way. Whether or not he had authority to make it, the United States had power to make it or to validate it when made, since the interest of the United States was the only one concerned. We can see no reason for doubting that the statute, which is the voice of the United States, had that effect. It is said that the instrument was void and hence was no patent. But the statute presupposes an instrument that might be declared void. When it refers to 'any patent heretofore issued,' it describes the purport and source of the document, not its legal effect. If the act were confined to valid patents it would be almost or quite without use. Leffingwell v. Warren, 2 Black, 599, 17 L. Ed. 261. * * * This statute must be taken to mean that the patent is to be held good, and is to have the same effect against the United States that it would have had if it had been valid in the first place."

But still another conclusive ground exists preventing action in this case against the Secretary of the Interior. The Secretary of the Interior, when a patent is issued, loses all jurisdiction and control over the patent or the subject-matter involved. The legal title to the patented land passes with the issue of the patent from the government and from the control of the Secretary, and the equitable title may thereafter be contested only in the courts; the Secretary being without equity jurisdiction. In United States ex rel. Bowlegs v. Lane, 43 App. D. C. 494, 496, this court said: "Relator is here seeking the writ of mandamus to compel the Secretary of the Interior to issue a patent for land against which there is an outstanding patent. It is well settled that when a patent for public land has been issued and recorded, the land is no longer a part of the public domain or under the supervision of the Land Department. It is not subject to collateral attack by a third party to secure title to the land through the government. It is conclusive against all persons whose rights do not antedate its issue. If irregularly issued, it may be set aside in a court of competent jurisdiction, in a proceeding instituted by the government itself."

The finality of a patent to convey the legal title of the government and place it beyond the jurisdiction of the Secretary of the Interior is without exception. In Hoofnagle v. Anderson, 7 Wheat. 212, 214, 5 L. Ed. 437, the rule was originally announced by Chief Justice Marshall, as follows: "It is not doubted, that a patent appropriates land. Any defects in the preliminary steps, which are required by law, are cured by the patent. It is a title from its date, and has always been held conclusive against all those whose rights did not commence previous to its emanation. * * * If the patent has been issued irregularly, the government may provide means for repealing it; but no individual has a right to annul it, to consider the land as still vacant, and to appropriate it to himself." This has been affirmed in many cases and again in the late case of Burke v. Southern Pac. R. Co., 234 U. S. 669, 692, 34 S. Ct. 907, 58 L. Ed. 1527.

The decree in the case of each of the appellants is affirmed.