## TRUEMAN FERTILIZER CO. v. LARSON.
### No. 13529.

United States Court of Appeals
Fifth Circuit.
May 23, 1952.
Rehearing Denied July 21, 1952.

Carroll Dunscombe, Stuart, Fla., for appellant.

Elizabeth Dudley, Attorney, Department of Justice, Washington, D. C., A. Devitt Vanech, Asst. Atty. Gen., Roger P. Marquis, Attorney, Department of Justice, Washington, D. C., Ernest L. Duhaime, Asst. U. S. Atty., Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and STRUM, Circuit Judges.

STRUM, Circuit Judge.

Appellant, Trueman Fertilizer Company, for itself and all others who may be affected, filed a complaint for declaratory judgment in the Southern District of Florida against "Jess Larson as General Services Administrator for the United States and Jess Larson as an individual and whose address and residence is the District of Columbia."

It appears from the complaint, that in 1942 the United States acquired by eminent domain certain lands in Palm Beach County, Florida, for war-time use, which appellant asserts was temporary, on which lands appellant held an existing judgment lien. Asserting that since the taking was for temporary use only, and such use having terminated and the land having been turned over to the defendant General Services Administrator as surplus, appellant contends that the lands should be decreed to have reverted to their former owner, and again subject to appellant's judgment lien. Appellant seeks a declaratory judgment to that effect.

An order was secured for service of process outside the State of Florida upon the defendant below. Service of said process was later quashed, and the complaint dismissed by the district court, because of improper venue; because the United States is an indispensable but absent party; and because the United States has not consented to be sued in this action. This appeal questions the correctness of those rulings.

The official residence of the General Services Administrator is in Washington, D. C. A personal action against him in that capacity must be brought there, as that is where he "resides" within the meaning of 28 U.S.C.A. § 1391(b). There is no statutory authority for instituting such a suit elsewhere. Blackmar v. Guerre, 5 Cir., 190 F.2d 427, affirmed 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. ——; Berlinsky v. Woods, 4 Cir., 178 F.2d 265; Smart v. Woods, 6 Cir., 184 F.2d 714; Putnam v. Ickes, 64 App.D.C. 339, 78 F.2d 223; U. S. Dept. of Agriculture v. Hunter, 5 Cir., 171 F.2d 793. There was no motion to transfer the cause pursuant to 28 U.S.C.A. §§ 1404(a) or 1406(a). Even if the service of the process in question would bind Larson individually, it is ineffectual here, because the complaint alleges that he claims title, not as an individual, but only in his official capacity as General Services Administrator. Moreover, he is not alleged to be a resident of the Southern District of Florida, so as to be individually suable there.

As the action is not against the land itself, but involves only the legal relations of the parties and their duty, or breach of duty, with respect thereto, the action is not *in rem*, but is *in personam*.[1] Even so, however, it affects title to the land, which is in the United States, although the defendant has custody of it as General Services Administrator. The United States is therefore an indispensable party to the suit. It has not been made a party, nor has it consented to be sued, both of which omissions are fatal to the suit. Young v. Anderson, 81 U.S.App.D.C. 379, 160 F.2d 225, certiorari denied 331 U.S. 824, 67 S.Ct. 1316, 91 L.Ed. 1840; Blondet v. Hadley, 1 Cir., 144 F.2d 370; Wood v. Phillips, 4 Cir., 50 F.2d 714; Chilcutt v. Watts, 297 Ky. 335, 180 S. W.2d 84.

Affirmed.

---

1. Amongst the prayers are:
   "4. That the Court hold and declare as to the rights of the land owners whose property was so condemned and what liability there may be for taxation thereon." * * *.
   "8. That the Court hold and declare that upon the declaration of the United States that said property was surplus, entitled the former owners whose lands had been so condemned, to take possession thereof and that the rights of lien holders were only suspended during the period the United States occupied said lands."