**Viola TAYLOR, et al.**

v.

**John WHITE, Jr., et al.**

**Civ. A. No. 90–3307.**

United States District Court,
E.D. Pennsylvania.

Nov. 6, 1990.

Ann Torregrosson, Dr. Philip Tannenbaum, Chester, Pa., for plaintiffs.

John Shellenberger, Harrisburg, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiffs, Viola Taylor, Shawn Paris, Cleveland Hodges and Louise Brookins, have brought this action for declaratory and injunctive relief against John White, Jr. in his official capacity as Secretary of Public Welfare of the Commonwealth of Pennsylvania, Michael H. Hershock, in his official capacity as Secretary of the Budget and N. Mark Richards, M.D., in his official capacity as Secretary of Health. Their amended complaint contains eleven counts, alleging violations by the defendants of various sections of Title XIX of the Social Security Act, commonly known as the Medicaid Act, the Rehabilitation Act of 1973, the Civil Rights Act of 1964 and the Fourteenth Amendment to the United States Constitution. These claims arise from policies initiated and maintained by the defendants, which plaintiffs allege have had the effect of discriminating against Medicaid patients in general, and black, hispanic and handicapped Medicaid patients in particular, in the provision of nursing home care in the Philadelphia area.

Presently before the court are two motions by the parties. The defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12, or in the alternative to transfer venue in this matter to the United States District Court for the Middle District of Pennsylvania, pursuant to 28 U.S.C. § 1406(a). Plaintiffs have moved to certify a class, pursuant to Fed.R.Civ.P. 23, of all persons who are seeking or will seek admission to a licensed nursing home provider in the Pennsylvania Medicaid Program.[1] The parties have entered into a stipulation of facts for the purpose of disposing of these motions.

---

1. There is also a motion before the court, filed on behalf of Richard Hernandez and Frank L. Ruszkowski, to intervene as party plaintiffs in this matter. This motion is unopposed by the Commonwealth defendants and will be granted. The intervening plaintiffs have also filed motions to proceed *in forma pauperis* and for the appointment of guardians ad litem. We have reviewed the affidavits submitted by the petitioners and find that they should be excused from payment of costs in this matter. Also, as each are incompetent by reason of mental infirmity, guardians will be appointed.

Plaintiffs, with the exception of Louise Brookins, are all persons eligible for Medicaid, who have attempted to be placed in nursing home facilities in the Philadelphia area. Plaintiff Taylor has been successfully placed in such a facility, after a lengthy period of waiting. The others either have been completely unsuccessful or are on waiting lists. Plaintiffs allege that their inabilities to be placed in nursing homes are the direct result of policies instituted by the defendants, which have created an artificial shortage of beds for Medicaid eligible patients, as an illegal way of controlling state Medicaid expenditures. Plaintiff Brookins is the executive director of the Philadelphia Welfare Rights Organization. She is not a Medicaid recipient. She seeks to represent the interests of all Medicaid recipients.

*The Defendants' Motion.*

The amended complaint asserts our federal question jurisdiction, 28 U.S.C. § 1331. It contains no statement of the appropriateness of venue in the Eastern District. Secretaries White, Hershock and Richards are all sued in their official capacities. As such they challenge the appropriateness of venue, arguing that for the purposes of the venue statute, 28 U.S.C. § 1391(b)[2], they reside only at the seat of government of the Commonwealth, located in the Middle District. They further aver that the plaintiffs' causes of action, premised as they are upon the policies of the defendants, also arose in the Middle District, where those policies were formulated and are administered, rather than in this District were their effects have been felt.

It is well settled that once personal jurisdiction has been challenged, it is incumbent upon the plaintiffs to show that jurisdiction is proper in the forum district. *See, e.g. Provident National Bank v. California Federal Savings and Loan Association,* 819 F.2d 434 (3d Cir.1987); *Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539 (3d Cir.1985). This doctrine has been extended to the question of venue.

*Mowrey v. Johnson & Johnson,* 524 F.Supp. 771, 774 (E.D.Pa.1981); *Lieb v. American Pacific International, Inc.,* 489 F.Supp. 690, 696 (E.D.Pa.1980); *Hawkins v. National Basketball Assoc.,* 288 F.Supp. 614, 615 (W.D.Pa.1968). Plaintiffs respond that defendants White and Richards both maintain their personal residences in this District. Also they argue that federal courts frequently recognize that officials with state-wide jurisdiction may have multiple residences for venue purposes. Alternatively, they aver that their causes of action inherently arose in the Eastern District.

▮ While we are in agreement with the defendants' argument that state officials who are sued in their official capacities should be deemed for venue purposes to reside at the place where they maintain their official offices, we do not agree that this may only be the seat of state government. They are correct, however, that where defendants White and Richards maintain personal residences is irrelevant.

▮ The cases which have addressed this issue are not in complete agreement. As early as 1885, the United States Supreme Court had determined that the general rule in suits against public officials is that a defendant's residence for venue purposes is the district where he performs his official duties. *See Butterworth v. Hill,* 114 U.S. 128, 132, 5 S.Ct. 796, 798, 29 L.Ed. 119 (1885); *see also, Florida Nursing Home Ass'n. v. Page,* 616 F.2d 1355 (5th Cir.1980); *O'Neill v. Battisti,* 472 F.2d 789 (6th Cir.1972), *cert. denied sub nom Heitzler v. O'Neill,* 411 U.S. 964, 93 S.Ct. 2142, 36 L.Ed.2d 685 (1973); 1 Moore's Federal Practice ¶ 0.142 [5.–1–2] and cases collected therein. A number of the cases applying this principle have involved federal officials or agencies and have found only one official residence. *See, e.g., Ernst v. Secretary of the Interior,* 17 Alaska 133, 244 F.2d 344 (9th Cir.1957); *Trueman Fertilizer Co. v. Larson,* 196 F.2d 910 (5th Cir. 1952).

---

**2.** § 1391(b) provides:
A civil action wherein jurisdiction is not founded solely on diversity of citizenship may

be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

A significant body of the case law, however, holds that a state agency or official does not necessarily have a single residence for venue purposes. *Florida Nursing Home Ass'n.*, 616 F.2d at 1360–1361; *Buffalo Teachers Federation, Inc. v. Helsby*, 426 F.Supp. 828 (S.D.N.Y.1976). In the federal context, courts have found officials to have but one official residence to avoid forum shopping and the related problems of inconsistent adjudications and requiring defendants to appear in inconvenient districts. In the state context, the problem of forcing the official to defend claims in distant fora is limited, as is the problem of forum shopping. Only in those districts within the particular state will jurisdiction and venue be initially available. Also the question will only arise in those states, like Pennsylvania, which include more than one federal judicial district. Thus, in *Buffalo Teachers*, the court determined that although the state agency involved was headquartered in the Northern District of New York, venue was also appropriate in the Southern District. The agency involved maintained a satellite office there, where a significant portion of its business was conducted.

Recognizing this distinction, the Court of Appeals for the Fifth Circuit in *Florida Nursing Home Ass'n.*, also determined that for purposes of venue, state officials could be deemed to reside in districts other than where the state capitol was located. The court also determined, in a case not dissimilar to that *sub judice*, that a plaintiff's claims may arise in more than one district within a state. That case involved claims by owners of nursing homes against Florida's Secretary of Health and Rehabilitation, concerning the plaintiffs' rights to certain payments under the Medicaid Act. The court stated

> ... 'where the claim arose' should 'be ascertained by advertence to events having operative significance in the case, and a common sense appraisal of the implications of those events for accessibility to witnesses and records'.... This is not to suggest that only a single district can satisfy the statutory standard with respect to any given claim. Often,

the factors deemed determinative might well indicate the suitability of several forums [sic].... In any case, the court should not oppose the plaintiffs' choice of venue if the activities that transpired in the district where suit is brought were not insubstantial and the forum is a convenient one balancing the equities and fairness to each party.

616 F.2d at 1361 (citations omitted).

Plaintiffs aver that at least two of the defendants' agencies maintain substantial regional offices in the Eastern District. As to defendant White, plaintiffs draw our attention to numerous cases in which his agency has defended actions in this District challenging access, coverage standards and rates. We are also directed to the case of *Vidra v. Egger*, 575 F.Supp. 1305 (E.D.Pa. 1982), in which Judge Fullam of this court determined that the Department of Public Welfare maintained a substantial regional office in Philadelphia. As to defendant Richards, plaintiffs aver that the Department of Health conducts annual civil rights compliance reviews of nursing homes in this District from its regional office located here. As to defendant Hershock, plaintiffs argue venue is appropriate pursuant to 28 U.S.C. § 1392(a), if we find we have venue over the claims against any of the other two defendants.

We find that the plaintiffs' showing regarding defendant White does not specifically meet the test set out above. It was incumbent upon them to demonstrate that the activities that transpired in this District were not insubstantial in creating their claims. They make no specific showing that the policies they challenge were created, implemented or administered from D.P.W.'s regional office in this District. Plaintiffs' showing regarding defendant Richards, however, is sufficient. Compliance with the civil rights statutes is a major component of the plaintiffs' causes of action. Therefore, the monitoring of nursing home compliance in this District is a substantial activity. As venue is thus proper over the claims against Richards, it is also proper, pursuant to § 1392(a) over the claims against the other defendants.

■ We also find that the Eastern District is a convenient forum for the adjudication of this action. Balancing the equities and fairness to each party, trial of this matter in this District will greatly ease the burden upon the plaintiffs, who are all disabled, and their guardians ad litem, from travelling to the Middle District for discovery and trial. We also note that they are represented by a public interest, non-profit law firm. Conversely, all defendants are officials of state-wide jurisdiction, at least two of whom maintain substantial satellite offices here. It is not unreasonable to require them to conduct discovery and trial in this District. Finally, as the Department of Health's nursing home civil rights compliance function is located in this District, it is reasonable to assume that witnesses and documents needed in this suit are located here.

For these reasons we find that venue is appropriate in the Eastern District. Defendants' motion, insofar as it seeks to transfer this matter to the Middle District is, therefore, denied.

Defendants' motion also seeks to dismiss this action on the ground that the individual plaintiffs each lack standing to bring this action. For the reasons which follow, we find that plaintiff Brookins lack standing. Her claims, therefore, will be dismissed. We also find, however, that plaintiffs Taylor, Paris and Hodges do have the requisite standing to pursue their claims. Therefore, their claims will be permitted to proceed.

■ In order to have standing to sue, plaintiffs must assert a personal stake in the outcome of the controversy, one which demonstrates that they have suffered an injury in fact. *Warth v. Seldon*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975). Second, the plaintiffs must show that their injury is causally linked to the putatively unconstitutional conduct of the defendants. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). These two factors have been characterized as the "irreducible minimum" required by Article III. *Valley Forge Chris-*

*tian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

The injury in fact component serves a separation of powers concern central to the case or controversy language of Article III by limiting judicial power to those disputes "thought capable of resolution through the judicial process". *Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968). It serves "as at least a rough attempt to put the [dispute] in the hands of those who have a direct stake in the outcome", *Sierra Club v. Morton*, 405 U.S. 727, 740, 92 S.Ct. 1361, 1369, 31 L.Ed.2d 636 (1972), and provide the court with "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult constitutional questions". *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

Additionally, plaintiffs must demonstrate a sufficient causal connection between the challenged activity and the alleged personal harm. The usual formulation of the causation requirement is that the plaintiff must show that the injury "fairly can be traced to the challenged action of the defendant". *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976).

■ Finally, plaintiffs must satisfy the so-called prudential limitations on federal court standing. Succinctly stated by the Supreme Court in *Warth* and *Valley Forge*, and quoted by our Court of Appeals in *Rocks v. City of Philadelphia*, 868 F.2d 644 (3d Cir.1989),

Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing. Thus, the Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.

*Rocks* at 648, *quoting Valley Forge*, 454 U.S. at 474, 102 S.Ct. at 760, and *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205. In other

words, plaintiffs must state individualized, rather than generalized grievances, in order to proceed in federal court.

■ We find that plaintiff Brookins can not allege sufficient facts to meet both the injury in fact component of standing as well as the prudential limitation. Brookins is identified in the complaint as the Executive Director of the Philadelphia Welfare Rights Organization. Complaint ¶ 12. She is also Chairperson of the Consumer Subcommittee of the Pennsylvania Medical Assistance Advisory Committee (P.M.A.A.C.). Complaint ¶ 56. It is averred that P.M.A.A.C. is required by federal law to provide advice to the Department of Public Welfare regarding the Department's administration of the Medicaid program.

It is also averred that plaintiff Brookins instituted an action in 1979 before the Department of Human Services Office for Civil Rights, alleging that admissions policies in area nursing homes violated Title VI of the Civil Rights Act of 1964. Complaint ¶ 59–64. Further, it is averred that Brookins introduced various resolutions before the P.M.A.A.C. calling upon the Department of Public Welfare to require nursing homes to have a first-come-first-serve admission policy. Defendant White has, allegedly, refused to enact such a policy. Complaint ¶ 65.

These allegations, we find, do not indicate that plaintiff Brookins has standing to assert the claims for which she seeks relief.

First, that she has, in the past, pursued an action before an administrative agency is irrelevant to the question of whether she has standing to pursue *these* claims before *this* court. Second, her claims are based on the allegation that she has sought, unsuccessfully, to require defendant White to implement certain policies in her capacity as Chairperson of the Consumer Subcommittee. There is no indication in the complaint, or the brief in opposition to the defendants' motion, how this might satisfy the requirement that she demonstrate some injury in fact, "capable of resolution through the judicial process". *Flast*, 392 U.S. at 101, 88 S.Ct. at 1953.

Brookins' only argument is that she has been denied a "real" opportunity for participation in policy development and program administration, which federal law requires.[3] However, the plaintiffs' own allegations, contained in the complaint, and the stipulated facts, refute this argument. The averments and stipulation demonstrate that she has had an opportunity to participate in policy development.[4] Rather, the crux of her claim is that her efforts to convince the defendants, through the committee process, that the policies she advocates should be implemented, have not been successful. Without something further to demonstrate that Brookins has, herself, been injured by an act of the defendants which violated the Medicaid Act or denied some personal right

---

3. We note that the reference to the "federal law" that creates such a requirement is to 42 C.F.R. § 431.12, which requires the states to establish medical care advisory committees as part of their Medicaid plans. Subsection (b) provides that:

> A State plan must provide for a medical care advisory committee meeting the requirements of this section to advise the Medicaid agency director about health and medical service.

> Subsection (d) provides that the committee must include members of consumers' groups, including Medicaid recipients.

> Subsection (e) provides that:

> The committee must have opportunity for participation in policy development and program administration, including furthering the participation of recipient members in the agency program.

4. The parties have entered into a stipulation of facts which includes several examples of plaintiff Brookins' participation in policy making and program administration in her capacity as a member of the P.M.A.A.C. and chair of its consumer subcommittee. ¶ 17 states that Brookins has, in her capacity as a P.M.A.A.C. member sought equal access to federally funded nursing homes for minorities and low-income Pennsylvanians for over ten years. ¶¶ 18–19 reiterates that portion of the complaint detailing Brookins' prior administrative action before the Office of Civil Rights. ¶¶ 20–21 details her actions in regard to access problems. ¶¶ 22–23 state that Brookins introduced resolutions to the P.M.A.A.C. calling for a first-come-first-serve admissions policy at nursing homes and met with Defendant White to discuss the issue. From these stipulated facts, we can only conclude that Brookins has had an "opportunity for participation" required by § 431.12(e).

or privilege without due process, she has no standing to pursue this action.[5]

Of equal importance, the complaint and brief in opposition to the motion demonstrate that Brookins seeks not to assert her own legal rights and interests, but to be a representative of actual Medicaid recipients. Complaint, ¶ 12. The four corners of the complaint indicate that Brookins' claims for relief rest upon the legal rights or interests of third parties, i.e., those who are eligible to placed in Medicaid funded nursing home beds. That she is a member of a policy making body gives her no more specialized interest in this dispute, than that possessed by the elected officials denied standing in *Rocks.* Accordingly, she must be dismissed as a party to this action.

■■■■ Next, it is argued that plaintiff Taylor's claims must also be dismissed. In the original complaint, it was alleged that Taylor was confined at Misericordia Hospital in Philadelphia because she had been unable to secure placement in a nursing home for long term care, following a debilitating stroke. The amended complaint indicates that, some time after the original was filed of record, Taylor was placed in a nursing home at Medicaid expense. It is argued,[6] therefore, that she no longer has any injury capable of prospective relief.[7]

Taylor responds that she has been placed in an inferior institution treating mostly members of minority groups. She avers that such nursing homes are not of comparable quality to those receiving federal funds and serving predominantly white patients. She alleges that these conditions are ongoing, harming her directly, and accordingly afford her standing to pursue prospective relief.

Alternatively, she argues that the nursing home where she has been placed has been cited by defendant Richard's department for numerous, serious deficiencies. It has been ordered not to accept any new patients or re-admit patients who were previously admitted, but then hospitalized. Based upon Taylor's history of multiple diagnoses of serious medical conditions, she argues it is not speculative that she will require future hospitalization and be precluded from re-entering this institution. She will, therefore, again suffer disparate treatment due to her status as a black Medicaid recipient in being placed in another nursing home. Thus, she argues, she presents claims which are capable of repetition, yet evading review.

Courts may entertain cases where the controversy in question is moot if the issue is one capable of repetition, yet evading review. *DeFunis v. Odegaard,* 416 U.S. 312, 318–19, 94 S.Ct. 1704, 1706–07, 40 L.Ed.2d 164 (1974) (per curiam), *quoting, Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); *Phila. Police & Fire Ass'n. v. City of Philadelphia,* 874 F.2d 156, 161 (3d Cir.1989). Along with its powers to entertain such cases, the court's power to grant injunctive relief survives discontinuance of the illegal conduct. *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1952). In *W.T. Grant,* the Supreme Court stated

> The purpose of an injunction is to prevent future violations ... and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that

---

**5.** The *ad damnum* clause of each count of the amended complaint, is styled "plaintiffs and the class they represent respectfully request" the court for the relief sought therein. There is no count containing a request for relief by Brookins that is distinct from that requested by the other named plaintiffs. Further, there is no count specifically alleging a violation of 42 C.F.R. § 431.12. While we express no opinion on whether such a violation could even be the basis for a private cause of action, as Brookins is merely included as another named plaintiff, we may only assume that she seeks the same relief that is sought by the other plaintiffs. As

such she has demonstrated no injury to her own rights.

**6.** While the defendants' brief entitles its argument as one directed to Taylor's standing, at least in this regard their argument is more properly stated as attacking Taylor's claims on the ground that they are moot.

**7.** The parties appear to be in agreement that retrospective relief is barred by the Eleventh Amendment.

there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.

*Id.* (citation omitted).

Whether there is some cognizable danger of recurrent violation, must be determined by examining how the initial violation terminated, evading review by the court. In the case *sub judice,* Taylor was successfully placed in a Medicaid funded nursing home bed after a substantial wait, but before the issue of alleged violations of the Medicaid Act could be adjudicated. It is not speculative to conclude from the stipulated facts, that she may again be faced with the proposition of finding placement in another nursing home. In *DeFunis,* it was held that the mere possibility that the plaintiff might be sidelined in his progression toward a professional degree by illness or otherwise, requiring his reapplication to school, was too speculative to invoke the capable of repetition doctrine. In contrast, Taylor's reencountering alleged prejudice in nursing home admission policies is quite real. It is undisputed that, if hospitalized, she will be unable to be readmitted to her current place of care. It is also likely, given her state of health, that she will require future hospitalization. She will, therefore, need to placed anew in a nursing home willing to accept her as a Medicaid patient. Her situation, thus, is capable of repetition, yet evading review.

Finally, it is argued that plaintiffs Paris and Hodges lack standing because they are receiving appropriate care, albeit in a hospital, at Medicaid expense. Plaintiffs take strong issue with this argument. First, they point out that the Medicaid Act requires states to maintain *both* a hospital program and a nursing home program. *See,* 42 U.S.C. § 1396d. Second, they argue that the two programs have different purposes and contain different requirements which the states must follow, once they decide to participate in the Medicaid program. For example, nursing homes are required to provide services and activities to attain or maintain the highest practicable physical, mental, and psychosocial well being of each resident. 42 U.S.C. § 1396r(b)(2). They note that if the defendants' argument is taken to its logical extreme, the skilled nursing requirements of the Act would become illusory, since non-acute patients could simply be maintained in hospitals indefinitely.[8]

We agree with the plaintiffs' arguments. Clearly the statutory scheme contains different requirements for acute care facilities and nursing facilities. Once a state opts to participate in the Medicaid program, it is required to provide the medical assistance described in paragraphs (1) through (5) and (17) of § 1396d(a). 42 U.S.C. § 1396a(10). Paragraphs (1) and (4)(A) of § 1396d(a) provide separately for inpatient hospital services and skilled nursing facility services. It is, accordingly, of no moment to argue that because plaintiffs Paris and Hodges are receiving some care in a hospital, that they have no standing to claim that they are allegedly not receiving the appropriate care they are due under the Act.

For these reasons, we find that plaintiffs Taylor, Paris and Hodges have standing to assert the claims contained in the complaint.[9]

---

**8.** They also contend that the defendants' argument that Medicaid is "footing the bill" for the plaintiffs' hospital care is spurious. Under the Medicaid reimbursement system, it is averred, the hospitals in which the plaintiffs are confined will receive no additional payment for the plaintiffs' hold over while they await nursing home placement. There is no factual record, as yet, however, to support this factual averment.

**9.** Defendants make one additional argument concerning the averments in the complaint regarding the plaintiffs' respective guardians ad litem. They argue there is no indication that they are "willing and true guardians ... willing to act as class representatives". The court has, by Orders dated May 21, 1990, appointed guardians ad litem based upon petitions and affidavits of the appointees that they will exercise their best abilities in such capacities. The question of class representation is addressed *post.* If the court should find, at some future point in these proceedings that the appointees are not acting in the best interests of the plaintiffs, we have authority to rescind their appointments or replace them.

*Plaintiffs' Motion for Class Certification.*

In their motion, plaintiffs seek to be designated as class representatives for a class consisting of all persons who: (1) are seeking or will seek admission to a licensed, nursing home provider in the Pennsylvania Medicaid program; and (2) at the time they are seeking admission or shortly thereafter, would be eligible for nursing home care reimbursement under the Pennsylvania Medicaid Program. The motion is made pursuant to Fed.R.Civ.P. 23(a) and (b)(2).

In pursuance of the motion, plaintiffs allege that each year more than 15,000 individuals are eligible for coverage under the Pennsylvania Medicaid Program, and receive care paid for by the state in intermediate care or skilled nursing facilities. They allege that the number of persons affected by the challenged practices and policies of the defendants are too numerous to be determined with precision, but is very large. They draw our attention to a 1989 study conducted for the Delaware Valley Hospital Council by the Wharton Health Care Management Program of the University of Pennsylvania (hereinafter the "Wharton Study"), which found that more than 200 patients were then in hospital beds in the Philadelphia region, awaiting nursing home placement. It is alleged that most of these patients are Medicaid eligible.

For a suit to be certified as a class action all four requirements of Fed.R.Civ.P. 23(a) and at least one of the subsections of 23(b) must be satisfied. Rule 23(a) provides that a class may be certified only if: (1) the class is so numerous that joinder of all members would be impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and (4) the representative parties will fairly and adequately protect the interests of the class. Additionally, plaintiffs rely upon Rule 23(b)(2) which requires that the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

The first requirement of Rule 23(a) is numerosity. It is alleged that each year 15,000 people receive care in Pennsylvania nursing homes, paid for by Medicaid. Plaintiffs allege that the number of potential class members is unknowable, but certainly quite large. They rely upon statistics, published by defendant Richards, which estimated a projected nursing home bed shortage in the Philadelphia area of 4,618 for 1990, and 4,304 for 1992. Pennsylvania Bulletin, Vol. 18, No. 6, p. 624; Vol. 19, No. 38, p. 4117. As the Wharton Study found that approximately seventy percent of Philadelphia nursing home bed days were paid for by Medicaid in 1989, and that more than two hundred Medicaid patients were then awaiting placement in Philadelphia hospitals, the total number of persons eligible for a Medicaid bed, but unable to find placement, is conservatively estimated to currently be more than one thousand, annually.

We find that the plaintiffs have met their burden of demonstrating numerosity. The defendants' sole argument *contra* is that they have identified only the three named plaintiffs as members of the putative class, each of whom have different disabilities. If, by their argument, the defendants contend that the plaintiffs are under the burden of identifying by name others who may be in the class, such an argument would be unsupported by the cases. They are merely required to show that the class is so numerous as to make joinder of all the members impracticable. If their argument is to be read that statistics which tend to show that joinder would be impracticable are insufficient, this too must be rejected.

In the case cited by defendants, *Mazus v. Dept. of Transportation, Com. of Pennsylvania,* 489 F.Supp. 376 (M.D.Pa.1979), *aff'd.,* 629 F.2d 870 (3d Cir.1980), the court determined in a footnote that Census Bureau statistics, offered to prove numerosity in a sex discrimination action, was unpersuasive. There, the plaintiff was contending that she had been the victim of discrimination in seeking employment as a highway maintenance worker. There is no discussion in the case of what statistics were offered, or why they were unacceptable. The defendants' inference, that we may

read from this case a broad rejection of statistical evidence tending to show the numerosity of a class, would be inappropriate.

Rather the statistics presented here go to the definition of the putative class: those who are seeking admission to a nursing home and are eligible for nursing home care reimbursement under the Pennsylvania Medicaid Program. Unlike in *Mazus*, the statistics presented here indicate that other persons have allegedly been subjected to similar treatment and are members of the putative class. That the statistics were compiled by independent researchers and the defendants themselves, renders them highly persuasive on the question of the size of the class.

The second requirement of Rule 23(a) is the existence of common questions of law or fact. The named plaintiffs have identified two legal issues allegedly common to all class members. They are: (1) the legality of the Commonwealth allowing nursing homes which receive federal funds to have admission policies and practices which subject plaintiffs to discrimination because of their age, race, color, or handicap; and (2) the legality of the Commonwealth's moratorium on reimbursement for depreciation and interest for new nursing home facilities and its limit on the cost basis for reimbursement for any new nursing home beds, which has allegedly resulted in a virtual freeze in construction of needed new nursing home beds for Medicaid patients; each of which is allegedly in violation of the provisions of Title XIX of the Social Security Act, the Civil Rights Act of 1964, the Rehabilitation Act of 1973 and the Fourteenth Amendment.[10]

Other than quotes from the cases discussing the common question requirement, defendants make no specific argument that common questions do not exist. As we find, post, that the arguments relative to both commonality and typicality[11] lack merit and that the challenged policies create issues common to all members of the class, accordingly we find that the plaintiffs have satisfied the commonality requirement.

The next Rule 23(a) requirement is typicality, i.e., that the claims of the representative plaintiffs are typical of those of the class. The plaintiffs allege that they and each member of the putative class have suffered deprivation due to the policies of the defendants which have limited the available number of nursing home beds and permitted nursing home operators to discriminate against Medicaid patients. Defendants argue conjointly that the plaintiffs have failed to demonstrate commonality and typicality, because the circumstances and legal theory of each proposed class member may differ markedly from other class members. They argue that each case of alleged discrimination must be decided on its own unique factual circumstances.

These arguments, while perhaps having some weight in class actions where monetary damages are the requested relief, are less relevant in actions such as this where the plaintiffs seek only injunctive and declaratory relief. Both the commonality and typicality requirements of Rule 23 do not require that all of the putative class members share *identical* claims. *Hassine*, 846 F.2d at 176–177 (3d Cir.1988), *quoting, Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.), *cert. denied sub nom, Weinstein v. Eisenberg*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). These prerequisites mandate only that the complainants' claims not be in conflict. As our Court of Appeals quoted in *Hassine*,

> Typicality entails an inquiry whether 'the named plaintiffs' individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based'.... Rule 23 does not require that the representative plaintiff have endured precisely the same injuries that have been sustained by the class

---

**10.** Plaintiffs' brief also cited the Age Discrimination Act of 1975. There is no count in the Amended Complaint which asserts a claim under that statute.

**11.** As our Court of Appeals has noted, although Rule 23 establishes these two prerequisites as separate and distinct, the analyses overlap. *Hassine v. Jeffes*, 846 F.2d 169, 176, n. 4 (3d Cir.1988).

members, only that the harm complained of be common to the class, and that the named plaintiff demonstrate a personal interest or threat of injury ... [that] is 'real and immediate,' not 'conjectural' or 'hypothetical'.

846 F.2d at 177.

In the matter *sub judice*, while the factual situations of each named plaintiff are unique to themselves, each has suffered an alleged deprivation due to the same actions of the defendants. The theory upon which they pursue their individual claims is the same upon which they will pursue the claims of the putative class. As we have previously determined that the named plaintiffs have each, with the exception of Brookins, demonstrated a personal interest in the outcome of this matter, we find that the typicality requirement has been met.

▆▆▆ The final requirement of Rule 23(a) is that the representative plaintiffs will fairly and adequately protect the interests of the class. The requirement of adequate representation has three elements. We must inquire whether the putative named plaintiffs have the ability and the incentive to represent the claims of the class vigorously, that they have obtained adequate counsel and that there is no conflict between the individuals' claims and those asserted on behalf of the class. *Hassine*, 846 F.2d at 179, *citing General Telephone Co. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982); *see also, In re Northern District of California, Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847 (9th Cir.1982), *cert. denied sub nom, A.H. Robbins Co., Inc. v. Abed*, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1982).

In their motion, plaintiffs aver that they have a strong personal stake in the outcome of this litigation and will, thus, represent the class vigorously. They also aver that their attorneys have had substantial experience litigating similar federal class actions on behalf of other beneficiaries of the Medicaid program.

In response, defendants make averments which apparently challenge the incentive of the named plaintiffs to adequately protect all members of the class. They argue that, as all named plaintiffs are black, there is no assurance they will adequately protect the interests of other races. They also argue that, as each suffers a unique handicap, they may not fairly and adequately protect the interests of people with different handicaps or diseases, especially those suffering from Acquired Immune Deficiency Syndrome. Finally, they argue that the plaintiffs cannot adequately represent all ages within the putative class. Plaintiffs respond that differences in age, race and medical condition will inevitably occur throughout any class established to challenge policies like those *sub judice*. We agree.

The definition of the putative class must be painted with a broad brush because the policies under challenge have allegedly discriminated against a broad spectrum of Medicaid recipients, who are themselves, while uniform in the category of wealth, composed of a broad spectrum of society. Those who seek to represent such a class, therefore, will rarely be able to match the various demographics such a class might contain. It is merely sufficient, however, that they have the ability and the incentive to represent the claims of the class vigorously. Given the level of representation exhibited in this action to date, we find no lack of incentive to pursue the claims of the entire class. Later, should we develop reservations on this score, the court is empowered under Rule 23 to designate subclasses to assure that the entire class is vigorously represented. We therefore reject the defendants' arguments.

▆▆▆ For a suit to be certified for class action, the representative plaintiffs must also demonstrate that the action may be maintained under one of the subdivisions of Rule 23(b). Plaintiffs assert that the action may be maintained pursuant to subsection (b)(2), which permits class actions to be maintained where

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Plaintiffs aver that, by curtailing Medicaid patients' access to nursing home care

through the use of the moratorium on reimbursement of the capital costs of new beds, and by refusing to remove access barriers to blacks and the poor, the defendants have acted or refused to act on grounds generally applicable to the class, making injunctive and declaratory relief appropriate.

Defendants respond that the class is not sufficiently homogenous and definable so that those to be bound by the judgment are capable of determination. They cite, generally, those cases which have held that (b)(2) class actions, because there is no notice to absent class members and opportunity of to opt out, present special due process concerns, arguing they require a heightened showing of cohesiveness and homogeneity. *See generally, Wetzel v. Liberty Mutual,* 508 F.2d 239 (3d Cir.1975); *Martin v. Easton Publishing Co.,* 73 F.R.D. 678 (E.D. Pa.1977). The defendants argument, however, is not supported by these cases.

An action seeking class-wide structural relief against state officials, on the ground of unconstitutionality of a statute or practice, is the archetype (b)(2) class action. What was stated by the court in *Wetzel,* is that by its very nature, a Rule 23(b)(2) class is inherently cohesive as to those claims tried in the class action. This homogeneity is a natural consequence of the Rule's condition that the party opposing the class have acted on grounds generally applicable to the class. Thus, the court held, "as long as the representation is adequate and faithful, there is no unfairness in giving *res judicata* effect to a judgment against all members of the class even if they have not received notice". *Wetzel,* 508 F.2d at 256. There is no requirement that there be exact identity of all issues among class members and the court is not required to look into the particular circumstances of each member of the class.

Rather, when a suit seeks to define the relationship between the defendants and the world at large, as in this case, (b)(2) certification is appropriate. *Hassine,* 846 F.2d at 179, *quoting Weiss v. York Hospital,* 745 F.2d 786, 811 (3d Cir.1984). In order to satisfy subsection (b)(2), plaintiffs must merely show that the interests of the class members are so like those of the individual representatives that injustice will not result from their being bound by such a judgment in the subsequent application of principles of *res judicata. Hassine,* 846 F.2d at 179; *Yearsley v. Scranton Housing Authority,* 487 F.Supp. 784 (M.D.Pa. 1979).

We have already determined that the named plaintiffs' claims are typical of those of the class and that they present questions common to the class. It is clear from the arguments presented that the interests of the named plaintiffs are the same as those of the class they seek to represent. We find, therefore, that they have satisfied the requirements of maintaining a subsection (b)(2) class action.

*Conclusion.*

In conclusion, as we find that the plaintiffs have satisfied the requirements of Rule 23(a) and (b)(2), in the order which follows, the court will certify a class consisting of all those persons eligible for nursing home care reimbursed under the Pennsylvania Medicaid Program, who are currently seeking or will be seeking admission to a nursing home provider, licensed by the Pennsylvania Medicaid Program. The motion of the defendants to dismiss the amended complaint will be granted only insofar as it applies to the claims proffered by plaintiff Louise Brookins.

### ORDER

The Motion of defendants John White, Jr., Michael H. Hershock and N. Mark Richards, M.D. to Dismiss the Amended Complaint or in the Alternative for Change of Venue is GRANTED in part and DENIED in part.

The Motion is GRANTED insofar as it seeks to dismiss the claims asserted in the amended complaint by plaintiff Louise Brookins.

The Motion is DENIED in all other respects.

The claims of plaintiff Louise Brookins are DISMISSED.

The Motion of the plaintiffs, pursuant to Fed.R.Civ.P. 23(a) and (b)(2) to certify a class action is GRANTED.

The class is hereby CERTIFIED consisting of all those persons eligible for nursing

home care, reimbursed under the Pennsylvania Medicaid Program, who are currently seeking or will be seeking admission to a nursing home provider, licensed by the Pennsylvania Medicaid Program.

The motion of Richard Hernandez to proceed in forma pauperis is GRANTED.

The motion of Frank L. Ruszkowski to proceed in forma pauperis is GRANTED.

The unopposed Motion of Richard Hernandez and Frank L. Ruszkowski for leave to intervene is GRANTED.

Joan Hernandez, mother of Richard Hernandez, is APPOINTED guardian ad litem for plaintiff Richard Hernandez.

Frank H. Ruszkowski, son of Frank L. Ruszkowski, is APPOINTED guardian ad litem for plaintiff Frank L. Ruszkowski.

IT IS SO ORDERED.